## DECEMBER TERM, 1843.

JANE DAVIS, *et al.* v. ELDRED G. ROBERTS, ADMINISTRATOR OF MATILDA VAUGHAN.

After general answer, the defendant cannot raise the question of jurisdiction on the hearing, unless the defect of jurisdiction goes to the very subject-matter of the suit.

An interlocutory decree for an account, is always under the control of the Court, and may, under peculiar views, even after confirmation of the report by a commissioner, taking an account under the decree, be reviewed and set aside.

D. filed her bill, claiming a large sum to be due from R.'s intestate, V. (for whom D. had once been guardian), for sums expended for V., while she was her ward. — An interlocutory decree for an account, though the bill did not pray for an account, was ordered, and the commissioner reported a large balance to be due D., for the care of V., not only while the relation of guardian and ward existed, but for a period long anterior to that time ; which report, although excepted to by both parties, was confirmed, without disposing of the exceptions ; *held*, upon final hearing of the cause, that the report of the commissioner was not *res adjudicata*, by the order of confirmation, but was under the control of the Court, and should be set aside and annulled, for irregularity.

D., in the year 1815, offered to take charge of V., a motherless infant, and raise and educate her at her own expense, and did so, until the year 1830, when she took out letters of guardianship over V., and her property, and in her report, as guardian, to the Probate Court, in 1832, stated that she had kept no account against V., and, from friendship for her mother, had been induced to raise and educate V. ; *held*, that under these circumstances, there was no foundation either in law or fact, for any charge in favor of D. against V., prior to the year 1830.

Where a guardian expends more money upon his ward, than the income of his ward's estate, without authority from the proper tribunal, he does it at his peril ; and, having so done, he has no claim to have the principal property sold to reimburse him in such excess, much less a right to retain the property for that purpose.

Where exceptions are allowed to a report, reducing the amount of the account reported, the Court can, without referring the account back for a restatement, modify the report, and settle the true amount upon the evidence reported.

THE bill in this case states, that Jane Davis was appointed guardian of Matilda Vaughan, an orphan, and came into possession of eight slaves, the property of said Matilda, to wit : Laura, aged 24, and her two children, both under the age of 4 years ; Fanny, aged 40, and her 4 children ; Alran, aged 18 or 20, Sandy, 10, Martha, 6, and Henry, 4 years.

That, from the 1st of April, 1815, to 16th March, 1834, said Jane expended large sums of money, for maintenance and educa-

tion of said Matilda, who died, about the 16th March, 1834, and Eldred Roberts became her administrator.

That since the death of Matilda, four of said slaves have been hired by said Jane to the complainant, Stamps, to wit: Matilda and her four children, and three have been hired to the complainant, Ananias Darbin, to wit: Laura, and her two children.

That Roberts has commenced an action of detinue against Stamps, and another action against Darbin, for said slaves.

That upwards of $3000 is due to Jane Davis, after deducting the amount received by her for hire of said slaves, and said slaves are the only security in her hands, out of which to return the advances of money, and expenses, for the maintenance and education of said Matilda, prays an injunction of the suits at law, and that said slaves may be sold to satisfy the amount due to said Jane, and the residue, if any, paid to the administrator, and for general relief, of the defendant.

The answer admits, that Jane Davis, in 1830, was appointed guardian, but avers she never gave bond according to the order of the court appointing her.

That some time in January, 1830, said Jane came into possession of the slaves of said Matilda, as is stated in said bill.

That said Matilda died in 1834, and defendant became her administrator.

That, about the year 1815, Jane Davis, for the friendship she had for Matilda's mother, besought the friends and relations of said Matilda, to suffer her to keep said Matilda, promising to raise and educate her at her own expense.

That several of the relatives and friends offered to take Matilda, then about one or two years old, and raise and educate her at their own expense, but said Jane insisted on keeping her, and raising her at her own expense, and never thought or pretended she was entitled to charge anything for raising said Matilda, until 1830, when she became her guardian, and received possession of said property.

The answer charges, that the hire of said slaves was more than sufficient to pay for Matilda's education and maintenance, up to the time of her death, without touching the capital, and insists said Jane shall not be allowed more than the income of said property.

That said Jane, so far from paying the debts of said Matilda, suffered, to a large sum, the debts to remain unpaid, which defendant, as administrator, has paid.

That defendant called upon her to deliver to him said slaves, to enable him to pay the debts, and obtained an order upon her, to deliver them, from the Probate Court, which she refused to obey. That defendant, therefore, commenced suit for the recovery.

The answer further says, that the charges made in the bill, for her maintenance and education, are unfair and unjust, illegal and false ; and of which no part, up to 1830, ought to be allowed, and, since 1830, the hire of the slaves was more than sufficient to compensate.

That if properly hired, the hire would have amounted to $1436, which would more than pay the expense of her maintenance and education.

That since the death of Matilda, the hire of the slaves has been worth $400 per year.

That upon a fair and legal settlement of accounts, between said Jane and the estate of said Matilda, a considerable balance will be due the estate of said Matilda.

That no part of said Jane's account ought to be allowed, as no vouchers are shown, and the accounts may still come against the estate, as some accounts have already come ; and prays that the injunction be dissolved, and that Mrs. Davis may be compelled to pay the defendant that portion of the hire for the slaves which she has received, over and above the amount of expenditure she had been at, on account of her ward, &c.

Upon this state of pleading, the then Chancellor ordered an interlocutory decree for an account ; the decree purports to have been made by consent of parties, and directs : " That the case be referred to John B. Jones, to take and state the account between the parties, of and concerning the charges and demands of complainant, Davis, by board and expenditures by her furnished and incurred, on behalf defendant's intestate ; and also, for charges and demands of defendant, against said complainant, Davis, for the use, hire, and profits of the slaves of defendant's intestate, in

the possession of said complainant, and for money received by complainant to said intestate's use.

" On taking the account, said commissioner is instructed to receive all proper vouchers, or evidences of debt, in behalf of either party, subject to such exceptions to their allowance, as either party may file before him. He will hear and receive all competent testimony in the cause, and report the same as taken, in writing, to this Court.

" It is further ordered, on taking said account, said commissioner is instructed to distinguish, in his report, such items and charges of complainant, Davis, against defendant's intestate, of date prior to her appointment as guardian to defendant's intestate, from those made subsequent.

" It is further ordered, that the *question* of final allowance *to* complainant, of demands and charges against defendant's intestate, accruing before such appointment of guardianship, be reserved for the decree of the Chancellor, on the coming in of said report.

" To give legal notice, &c., and report to the next term."

The cause was duly referred, and the report made in *due time*. It is not deemed necessary, to set out the particulars of this report at greater length than is done in the Chancellor's opinion. It was excepted to by counsel of both parties, but notwithstanding the exceptions, and without any disposition of them, was confirmed.

The report exhibited a large balance in favor of Mrs. Davis, and extended over the whole period from 1815, until the death of Miss Vaughan.

Upon this state of fact and pleading, the cause was submitted for final hearing and decree.

*Winchester*, for the complainant.

The confirmation of the report was a waiver of the exceptions, and precludes any inquiry behind the report.

Probate Court had no jurisdiction with reference to the account accruing before the relation of guardian and ward commenced, and, there being a general answer, the question of jurisdiction thus far is waived. 4 J. Ch. R. 445.

Objections to the admissibility of evidence before a Master, not

Davis, et al. *v.* Roberts.

made the ground of exception on the coming in of the report, will be considered as waived, and cannot be made at the final hearing. *Maurice* v. *Cox,* 5 John. Ch. Rep. 441 ; *Smith* v. *Smith,* 4 vol. John. Ch. Rep. 445.

On the final hearing, the Court cannot hear objections to the interlocutory decree to account, or to the confirmation of the report, both of which are *res adjudicata.*

The interlocutory decree was drawn up by defendant's counsel, and is in his handwriting, Mr. *Henderson's,* and is by consent of parties.

It directs, that the consideration of what items should be allowed, anterior to the appointment as guardian of the complainant, should be reserved to the coming in of the report. On the coming in of the report, the exceptions accompanied them, and the items were allowed by the confirmation of the report, and are not now open for discussion.

*Quitman* and *M'Murran,* for defendant.

It appears that the report of the commissioner has been confirmed, notwithstanding exceptions were filed, without any notice of the exceptions.

Without dwelling upon this error, we propose to look into the merits of the cause. The confirmation of the report, made upon an interlocutory order by consent, amounts to nothing more than a recognition of the correctness of the amounts of claims reported under each head.

The interlocutory order is not a decree to account. It contains no order or decree to account. It is a mere reference, by consent, to ascertain amounts as facts. If it can be considered as an order to account in relation to receipts and expenditures, as guardian, it certainly and clearly leaves the question of the liability of the defendant, for the items prior to 1830, the open subject of consideration to the final decree.

The confirmation makes no order in relation to that branch of the report. The disposition of that claim can only be made on final hearing. Neither party could except, under the terms of the interlocutory consent order, that the commissioner reported certain

claims, because it was agreed he should report them.   Therefore, the confirmation  merely recognizes  the propriety of  the report,  so far as it follows the reference.

This consent  reference  can  only  be considered as a convenient mode of  finding facts, to be used on final hearing.

If this be considered a correct view  of  this order, admitting the consent to account, while  the  relation of guardian and  ward really existed, I insist upon  the  statute of limitations  against the old account claimed.

2.  The evidence shows it never was intended to be claimed.   It was never claimed by the guardian, by the exhibition of any account. 2 M'Cord, Ch. R. 56 ;  1 Munf. 119.

3.  All claim, if  any  existed, and all controversy about it,  is settled by the report  to the Orphans' Court, and by the final order, directing the, property to be delivered up.   This must be regarded, in connection with the report, as a final and conclusive settlement of all claims  between the  guardian and ward.   And if the consent to refer the  accounts  since  1830, may be considered as enabling this Court to take jurisdiction of those matters, no such consent, to allow claims prior  to  1830, can  be  drawn  from  the reference, and we make all objections to them.

4.  A guardian, who has had possession of a ward's property, and has never rendered any account of that  property  to the proper tribunal, cannot be allowed for expenses.

The above remarks are made on the  supposition  that  the  Court can take cognizance of the order of reference, on account of the partial consent of  the defendant.   We think, however, the  Court has no jurisdiction to  compel or settle such  account  between  guardian and ward, and that the partial records presented show that the competent tribunal  has already acted upon  these accounts, and given a final decree  thereon,  by the order to deliver up all the property of the ward.   If such should  be the view  taken, what should be the decree ?

The complainant has come  into  this Court, and  herself shown, and the proofs show, that she has received the hire of  these  slaves from the termination of  her guardianship, by the death of the ward.

We should receive a decree for that sum, as ascertained, and the injunction should be dissolved.

CHANCELLOR. It is necessary, to a correct understanding of this case, that I should advert to its leading facts, and to the peculiar attitude in which it is submitted for final hearing ; as much of the embarrassment in its consideration arises from technical difficulties, which have grown up in its preparatory stages.

The substantial facts of the case, as disclosed by the pleadings and proof, are these : — The complainant (Jane Davis) in April, 1815, solicited and obtained the care and custody of the person of Matilda Vaughan, then a motherless infant, and continued that custody, as a kind of foster-mother, up to January, 1830, when she applied for and obtained an order for letters of guardianship to said minor, from the Probate Court of Wilkinson county, and thereupon took possession of eight negro slaves, belonging to her said ward ; and, in 1832, returned to said court an account of their hire, which appears to be the only account of the kind exhibited by her during the continuance of her guardianship. In March, 1834, Miss Vaughan died, and the defendant administered upon her estate, and obtained an order from said court, requiring Mrs. Davis to deliver over to him all the property in her hands, as guardian aforesaid. This order was disregarded, and the administrator brought his action of detinue, to recover the possession of said slaves; whereupon, the complainants filed their bill in this Court, enjoining said action, and in which Mrs. Davis claims a large balance as due her, in her character of guardian, dating her account back with the commencement of her care and custody of the person of Miss Vaughan, and asking a decree for the sale of said slaves, to satisfy such balance. No account is asked for, but a specific balance is stated, in the shape of a fixed and ascertained debt. The answer of the administrator admits that Mrs. Davis took charge of his intestate (Miss Vaughan) in the year 1815, but states that it was done at her earnest solicitation, and with the promise that she would raise and educate her, at her own expense, and insists that no charge can be made from 1815 up to 1830, when she became guardian ; and that, from that time to the death of Miss Vaughan, the use and hire of the slaves was more than

sufficient to meet the expenses for board and education, and asks a decree against Mrs. Davis for the overplus.

In July, 1836, an interlocutory order for an account was made by Chancellor Turner, with the consent of the parties, in which the commissioner is instructed to state an account of the charges for board and education, and of the charges for the hire of the slaves, and to distinguish between such charges for board, &c. as accrued before the complainant's appointment as guardian, and those which accrued afterwards. The commissioner made his report accordingly, showing a large balance due the complainant, accompanied by exceptions taken by both parties. By some oversight, as I presume, this report was subsequently confirmed, without any notice having been taken of the exceptions; and in this awkward and embarrassed condition, the case was submitted, at a former day, on final hearing. The counsel for the defendant insists, that the case should be dismissed, for want of jurisdiction; that the settlement of the account of the complainant properly belongs to the Probate Court in which the letters of guardianship were taken. If this objection had been taken by demurrer or plea, or had been insisted on in the answer, I should have held, in accordance with the course of decision in this State, that the bill should be dismissed; but the objection is not taken in either of these forms. It has been repeatedly decided, in this Court and elsewhere, that a defendant cannot, after general answer, raise the question of jurisdiction on the hearing, unless the defect of jurisdiction goes to the very subject-matter of the suit. The true contest is, whether the complainant is entitled to any portion of the account, reported as accruing prior to the date of her letters of guardianship. The complainant's counsel insist, that that question cannot now be looked into ; that it became *res adjudicata*, by virtue of the interlocutory decree, and the confirmation of the report made under that decree ; neither of which, it is insisted, can be reviewed upon the final hearing. I cannot assent to these propositions, to the extent to which they go. Suppose (as will appear to be the case here), that an interlocutory order should be made, directing an inquiry into matters for which there was no foundation laid by the bill, must the Court necessarily decree upon those matters, because of such order, and a confirmation of the report thereon ? I think not. A general

reference for an account is a mere decretal order, and has not the conclusive incidents of a decree. It is intended to ascertain mere matters of fact, pertinent to the case, and preparatory to a final hearing. 1 Hoffman, Ch. Pr. 501. And if, under such reference, the commissioner reports anything not warranted by the bill, the Court would, I conceive, be bound to disregard it upon final hearing ; and that, too, whether exceptions were taken or not, and even though the report had been confirmed; for the reason that the Court, in rendering a decree, cannot travel out of the boundary prescribed by the pleadings and proof. Such a report would be analogous, in its effects and consequences, to the finding of a jury, under an immaterial issue. I find express authorities (if indeed authorities were necessary on such a point), which warrant me in declaring that an interlocutory order, made in the progress of a case, is always under the control of the court rendering it, and that it is not error to set it aside. *Hays* v. *May's heirs*, 1 J. J. Marsh. 497. Such order may be set aside for irregularity or other cause, showing that it should not be allowed to stand. 2 Mylne and Keene, 284 ; 4 Johns. Ch. R. 35.

There are many cases where the report of a commissioner has, under peculiar circumstances, been reviewed, even after confirmation. *Adams* v. *Claxton*, 6 Ves. 226 ; *Turner* v. *Turner*, 1 Jacob & Walker, 39 ; 1 Hoffman's Ch. Pr. 549. I think the case before me presents the strongest ground for the exercise of that power. In the first place, it was certainly irregular to take a confirmation of the report, while exceptions were pending from both parties. In the next place, it appears from the complainant's bill, that she claims alone in her character of guardian, without stating at what time she became such guardian. There is no claim, whatever, set up by the bill, except such as accrued to her in right of her guardianship. It is clear, therefore, that she cannot, by the form of any interlocutory order, nor by any proof, make her case broader than it is made by her bill. Now the proof shows, that she became the guardian of Miss Vaughan in the year 1830 ; the commencement of her account, as guardian, must necessarily be limited to that date. The rule, that the *allegata* and *probata* must correspond, has the same reason to support it in equity, as at law. The bill makes a claim for money alleged to have been expended

upon Miss Vaughan, as the complainant's " ward," and she exhibits an account which goes back to the year 1815, when the proof shows that the relation of *guardian* and *ward* did not commence until in the year 1830. There is no claim set up by the bill upon the principles of an implied assumpsit, on the part of Miss Vaughn, to account for money expended in furnishing her with necessaries. This might perhaps have been sufficient to authorize the complainant to go behind her letters of guardianship, in stating her account. But then it would have been confined to absolute necessaries, according to all the legal restrictions and qualifications upon that subject. The account is, therefore, erroneous upon its face, so far as it is allowed the complainant, prior to the year 1830, there being no foundation laid by the bill and testimony for that branch of the report. In such case it is well settled, that the report may be objected to at the hearing, even in the absence of exceptions. *White's* exe'rs v. *Johnson*, 2 Munf. R. 285. The interlocutory order to account, instead of admitting the complainant's right to an account, previous to the year 1830, contains a strong implied denial of such right, by requiring that portion of the account to be distinguished from the other, and reserving the question of its legality to be subsequently passed upon by the Court. This seems to me to be the scope and effect of that order.

And now, having freed the case from these technical difficulties, the question is, What decree should be rendered upon the merits of the case ? I have no difficulty in declaring, that if the bill had been broad enough to admit such inquiry, I should still have held, that that portion of the account embraced between the years 1815 and 1830 was improperly allowed. It is clear from the complainant's own report, and from the deposition of Stafford (both of which were improperly excluded by the commissioner), that she took charge of Miss Vaughan from mere motives of friendship to her mother, without the intention, or expectation, of charging her with the expenses of board and education. The rules of both law and morality require, that what was intended as a mere gratuity, shall not be converted into a pecuniary demand. The idea of making a charge at all, was evidently an afterthought, and does not appear to have been suggested, until after the death of Miss Vaughan, or, at least,

not until 1830, when letters of guardianship were taken.    The report of Mrs. Davis, as guardian, made to the Probate Court of Wilkinson county in 1832, states, that she had kept no account against her ward, and that, from the strong ties of friendship for the mother of her ward, she had been induced to raise and educate the latter at her own expense.    The deposition of Stafford proves, that he was desirous of taking the child, and offered to do so, and raise her at his own expense, but that Mrs. Davis would not consent to it.    Under these circumstances, there is no foundation in law or in fact, for any charge prior to the year 1830.    2 M'Cord, Ch. Rep. 56 ; 1 Munf. Rep. 119.    But even if the complainant had been regularly appointed guardian, in the year 1815, still the prayer of the bill for the sale of the principal property of the ward could not be granted.    A guardian who expends more money upon his ward than the income of the ward's estate, does it at his peril. It is well settled that a guardian cannot trench upon the principal property of his ward by exceeding his income, without authority for that purpose from the appropriate tribunal.    Here the complainant, if her accounts were allowed, having exceeded the income of her ward, has no claim to have the principal property sold to reimburse her in such excess, much less a right to retain the property for that purpose.

Upon the whole, I shall direct the order of confirmation to be vacated, as having been irregularly obtained ; and that the exceptions of the defendant to the report be sustained, as to so much of the account as goes behind the year 1830 ; and that the report as to the remainder of the account be confirmed: that the exceptions of the complainant be disallowed ; and that the defendant have a decree over against the complainant Davis, for the difference between the charge of hire for the negroes, and the charge of board, &c., from 1830, as reported ; that the injunction to the suit at law be dissolved, and that the complainant, L. Davis, pay the costs of this suit.

At first, I had some doubt, whether, upon sustaining a part of the exceptions to the report, it would not be necessary to refer it back for a restatement of the account; but, upon an examination of the practice upon this subject, I find it is unnecessary.    Where ex-

ceptions are allowed to a report, reducing the amount of the account reported, the Court can modify the report, and settle the true amount upon the evidence reported, without referring it back to a commissioner.    *Taylor* v. *Reed*, 4, Paige, Ch. R. 561.

Let a decree be prepared in accordance with these views.